FOSTER v. PAINE ET AL.

1. **Contract**: NOVATION: FACTS CONSTITUTING. The facts of this case considered, (see opinion,) and *held* to constitute a contract of novation, whereby it was agreed between plaintiff, his debtor, and a third party, that plaintiff should accept the third party as his debtor, and that the original debtor should be discharged.

2. **Mortgage**: NOT DISCHARGED BY CONTRACT OF NOVATION AS TO THE DEBT. No mere change in the form of the debt, nor in the *personnel* of the debtor, has the effect to discharge the mortgage security. And in this case, where the mortgagor sold the mortgaged premises to a third person, and, by a contract of novation, the mortgagee delivered up the mortgage notes to the mortgagor, and accepted the notes of the third person for the same indebtedness, *held* that this, without more, did not work a discharge of the mortgage.

3. ———: CANCELLATION OF BY ATTORNEY WITHOUT AUTHORITY: PRIORITY OF LIENS: RECORD NOTICE. Where a mortgagor of land sold the land to another, and the mortgagee gave up the original notes to the mortgagor, and accepted the notes of the purchaser instead, and authorized his attorney in fact to cancel of record the original mortgage upon the receipt of a new mortgage from the purchaser, but the attorney, without authority, canceled the original mortgage without receiving such new mortgage, but, prior to such cancelation, the purchaser had mortgaged the land to P., *held* that P., when he took his mortgage, was charged by the record with notice of the original mortgage, and that the original mortgage, though so canceled without authority, still subsisted in equity as against the purchaser and P., and was a lien upon the land superior to the mortgage so made to P.

*Appeal from Davis District Court.*

THURSDAY, MARCH 20.

IN the year 1873, plaintiff sold to defendant, Jesse Fisk, a farm of one hundred acres, in Davis county, for fifteen hundred dollars. Two hundred dollars was paid in cash at the time of the sale, and for the remainder of the purchase price Fisk gave six notes, which became due respectively on the 25th day of December, 1875, 1876, 1877, 1878, 1879 and 1880; and these notes were secured by a mortgage on the premises, executed by Fisk and his wife. In 1876, Fisk sold the land

to Henry H. Draper for the same price which he had agreed to pay plaintiff for it. At the time of this sale to Draper, no part of the principal of the notes given by Fisk to plaintiff had been paid; but two annual installments of interest had been paid thereon. At about the time of the sale of the farm by Fisk to Draper, plaintiff gave a power of attorney to Joseph Peden, authorizing him to cancel the Fisk mortgage, "and to take up the notes which said mortgage is subject to, and to take new notes and a new mortgage, of the same terms, of H. H. Draper, in place thereof." The Fisk notes and the mortgage securing them were delivered up to him, and the notes of Draper for the same amounts were delivered by Draper to Peden, but no mortgage securing said notes was ever given by Draper; and in June, 1877, defendant, Paine, loaned four hundred dollars to Draper, who gave him a mortgage on eighty acres of the land to secure the same. In August of the same year, Peden, as the attorney in fact of plaintiff, entered satisfaction of the Fisk mortgage in the record thereof. Plaintiff now alleges that the surrender to Fisk of the notes and mortgages, and the entry of satisfaction of the mortgage by Peden, without first obtaining from Draper a mortgage securing the notes given by him in lieu of the Fisk notes, was without his authority, and that Paine had notice of his right when he received the mortgage from Draper; and he prays that the cancellation of the Fisk mortgage by Peden as his attorney may be set aside; that he have judgment against Fisk for the amount of the notes, and that the mortgage be declared a lien on the land, superior to the interest therein of any of the defendants.

The defendants deny that the surrender of the Fisk notes and mortgage, and the cancellation of the record of the mortgage, were without plaintiff's authority. They also deny that Paine had any notice of plaintiff's alleged equities in the land, when he accepted the mortgage thereon from Draper. They also allege that plaintiff, with knowledge of the surrender of said notes and the cancellation of the mortgage, ratified the

acts of his attorney in surrendering and cancelling the same. They also allege that plaintiff's mortgage has been fully satisfied by a sale by Draper to him of the mortgaged premises, which was made in satisfaction of the debt due from Draper to him.

The district court entered judgment against defendant, Fisk, for the amount of the six notes, and established the mortgage as a lien on the premises superior to any interest therein of any of the defendants. The judgment also forecloses the mortgage, and provides for the sale of the mortgaged premises on special execution, and for a general execution against Fisk for any balance of the judgment remaining after the mortgaged premises are exhausted. The defendants appeal.

*Mitchell & Dudley* and *Payne & Eichelberger*, for appellant.

*Trimble, Carruthers & Trimble*, for appellee.

REED, J.—I. The evidence very satisfactorily establishes that there was an understanding between plaintiff and Fisk and Draper, that the latter, in consideration of the sale of the farm to him by Fisk, should become responsible to plaintiff for the amount of Fisk's debt to him. Plaintiff testifies that when Draper bought the farm of Fisk he wrote to him, asking him whether he would consent to such an arrangement; and both Draper and Fisk swear that plaintiff wrote to Draper in answer to this letter, giving his consent to the arrangement. Plaintiff has not denied this. He testifies, however, that, at the request of Draper, he gave Peden the power of attorney, and that that was the only instrument of writing he ever gave to any one, authorizing the cancelling of the mortgage. This, however, does not amount to a denial of the statement of the other witnesses, that he wrote the letter to Draper, consenting that he might be substituted in place of Fisk as his debtor.

*1. CONTRACT: novation: facts constituting.*

Nor is it inconsistent with that statement. Before he purchased the farm from Fisk, Draper was the agent of plaintiff in Davis county, and, as such agent, had in his possession the notes and mortgage from Fisk to plaintiff. When he made the purchase of the farm, and the arrangement was made that he should become responsible to plaintiff for the price, he delivered up to Fisk his notes and mortgage, and executed his own notes to plaintiff for the same amount as the Fisk notes, and delivered the same to Peden, who, in the mean time, had received plaintiff's power of attorney.

In December, 1876, Draper paid plaintiff six hundred and sixty dollars to be applied on the indebtedness, and, the notes still being in Peden's hands, plaintiff wrote him, giving directions as to the manner in which the amount should be credited on the notes, also advising him that he had made arrangements with Draper to send directly to him (plaintiff) any payments which he might make in the future on the notes, and that he would advise him (Peden) of any such payments, so that he could make the proper credits on the notes. We are satisfied that plaintiff knew, when he received this payment from Draper, and made the arrangement with him, that the Fisk notes had been surrendered up to Fisk.

The facts with reference to this transaction, then, briefly, are these: Fisk was indebted to plaintiff in the sum of $1,300, and this was secured by mortgage on the farm; Draper, in the purchase of the farm from Fisk, became indebted to him in the same amount. It was agreed between the parties that Draper should become responsible to plaintiff for the amount, and that plaintiff should accept him as his debtor instead of Fisk; and, in pursuance of this agreement, Draper executed and delivered to plaintiff his notes for the amount, and Fisk's notes were surrendered to him, and plaintiff, with knowledge of that fact, received from Draper the six hundred and sixty dollars, and otherwise recognized him as his debtor.

The effect of this is undoubtedly to discharge Fisk from all liability to plaintiff for the debt. Draper, having con-

tracted with Fisk's consent to pay the debt to plaintiff, is discharged from his former liability to Fisk and is substituted in Fisk's stead as plaintiff's debtor. We think, therefore, that the district court erred in rendering a personal judgment against Fisk.

II. The next question to be determined is, whether the mortgage given by Fisk continued to have effect as a security for the debt, after Fisk was discharged from personal liability for the debt, and Draper was substituted as the debtor to plaintiff. The claim of defendants is that the discharge of Fisk from personal responsibility for the debt, and the surrender to him of the notes, have the effect to extinguish the debt which the mortgage secured, and that, as the debt is the life of the mortgage, its extinguishment operates necessarily to discharge the mortgage.

1. MORTGAGE: not discharged by contract of novation as to the debt.

It is undoubtedly true that any act which amounts to a payment of the debt also discharges the mortgage. But in this case we think the debt which was secured by the mortgage has not been extinguished. The debt from Draper to Fisk was satisfied by the arrangement between the parties, but the only effect of the arrangement as to the debt from Fisk to plaintiff was to substitute Draper for Fisk as the party personally liable therefor. The undertaking of Draper was, not that he would pay to plaintiff the debt which he owed Fisk, but that, in consideration of being discharged from that debt, he would pay to plaintiff the debt which Fisk owed him. So that the debt now due the plaintiff is the same debt that Fisk secured by the mortgage. And the rule is well settled that the mortgage continues in force until the debt is satisfied. No mere change in the form of the debt, nor (as we think) in the *personnel* of the debtor, has the effect to discharge it. *Sloan v. Rice*, 41 Iowa, 465; *Packard v. Kingman*, 11 Id., 219; *Hendershott v. Ping*, 24 Id., 134; *Watkins v. Hill*, 8 Pick., 522; *Pomroy v. Rice*, 16 Id., 22.

III. It is undoubtedly true that the intention of the par-

Foster v. Paine et al.

ties, when they entered into the arrangement, was that the

3. —— : can-cellation of by attorney without au-thority : priority of liens : record notice.

Fisk mortgage should be surrendered, and satisfaction of it entered of record. The power of attorney given by plaintiff to Peden empowered him to enter such satisfaction for plaintiff. But we think it equally true that the intention was that Draper should secure the debt by a mortgage on the same premises. We are satisfied that the plaintiff never consented to relinquish the security which he had in the mortgage for the debt. And, when the case was here on a former appeal, we held that the power of attorney gave Peden authority to cancel the Fisk mortgage only on the giving of a new mortgage by Draper. 56 Iowa, 622. If this purpose of the parties had been carried out, the mortgage by Draper would not have created a new lien or security. Its effect would have been simply to continue the security created by the Fisk mortgage, so that the question of the effect of the Fisk mortgage, up to the time of the entry of satisfaction by Peden, is not affected by the agreement of the parties that it should be surrendered, and satisfaction of it entered of record.

But it is claimed by defendants that the satisfaction of the mortgage, entered of record by Peden under plaintiff's power of attorney, has the effect to terminate all rights of plaintiff under it. This claim, however, is disposed of by our holding in the former appeal that the power of attorney authorized the cancellation of the Fisk mortgage only upon the execution by Draper of a mortgage which would preserve and continue the security created by the former mortgage; and to that holding we are content to adhere. The entry of satisfaction, then, was unauthorized, and plaintiff's rights are not affected by it.

We do not overlook the fact that the mortgage was delivered to Fisk by Peden at the same time that he surrendered Fisk's notes to him. But as plaintiff had not consented to relinquish his mortgage security, this surrender of the instrument would not have the effect to extinguish it.

At the time Paine took his mortgage from Draper, the

Foster v. Paine et al.

Fisk mortgage was of record, and he was charged with notice of it. The fact that Fisk had been discharged, and Draper substituted as the debtor, does not affect the question. The record if the mortgage which, as we have seen, continues as a security for the debt, was sufficient to advise him of the existence of an encumbrance on the land, and he was bound to take notice of it.

IV. We do not find any evidence that plaintiff ever ratified or approved the act of Peden in entering satisfaction of the mortgage of record. But, on the contrary, it appears that he repudiated the act as soon as he was informed that Peden had entered the satisfaction without taking a new mortgage from Draper.

V. Some negotiations took place between him and Draper for the purchase by plaintiff of the farm, in satisfaction of the debt in question, but it is clear from the evidence that they never entered into a contract with reference to this matter that either could enforce. The evidence of the negotiation is entirely in parol; and, if an agreement was ever arrived at, it was made on a Sunday, and was consequently unlawful. It has never been executed, and could not now be enforced.

The personal judgment against defendant, Fisk, will be reversed, and the case will be remanded to the district court for the entry of judgment even against Draper for the amount of the debt and for the foreclosure of the mortgage, or, if plaintiff elects, such judgment will be entered here.

REVERSED.