DES MOINES NATIONAL BANK, Appellee, v. ENOS STANLEY et al., Appellees; MARGARET E. WILLIAMS et al., Appellants.

JUNE 26, 1928.

*Howard L. Bump,* for Margaret E. Williams, C. Leonard Williams, and F. D. Wiley, appellants.

*Ladd & Ladd,* for Alma Green, appellant.

*Miller, Kelly, Shuttleworth & McManus,* for Des Moines National Bank, appellee.

*Cole D. McMartin,* for Kirkville Savings Bank, appellee.

*Lehmann, Seevers & Hurlburt,* for A. K. Barnard, Trustee, appellee.

*Wilson & Shaw,* for Norwalk State Bank, appellee.

*J. G. Myerly,* for First National Bank of Valley Junction, appellee.

*Charles Hutchinson,* for Security Loan & Investment Company, William Wilcoxen, Receiver, and J. D. Edmundson, appellees.

*J. L. Witmer,* for Cora E. Collins, appellee.

*H. H. Griffiths,* for Central State Bank, St. Charles Savings Bank, State Savings Bank of Chariton, Valley National Bank, and Anna Mennig, appellees.

*Dunshee & Brody,* for Glen Bailey Company, appellee.

*Tom K. Murrow,* for Humeston State Bank, appellee.

WAGNER, J.—On November 25, 1921, Enos Stanley was the owner of certain real estate in the city of Des Moines, known as the Glen Bailey Apartments. The Security Loan & Investment

 Company was at that time engaged in the general loan and mortgage business, but has since failed, and is now in the hands of a receiver. On the aforesaid date, Stanley and his wife, for moneys advanced by the aforesaid company, executed unto it 23 promissory notes, in the amount of $1,000 each, and another note in the amount of $22,000, and as security for said loan, executed unto said company a mortgage upon the aforesaid real estate. The first of the notes, in the amount of $1,000, became due July 1, 1925, and the remaining $1,000 notes became due every six months thereafter until July 1, 1937, when the $22,000 note, according to its terms, would become due. The mortgage was recorded in the recorder's office of Polk County on November 29, 1921. The Security Loan & Investment Company was indebted to the plaintiff bank in the sum of $24,000, and on January 12, 1922, as collateral security for said indebtedness, assigned the $22,000 note and two of the $1,000 notes,

and executed unto said bank an assignment of the aforesaid mortgage. In like manner, the Investment Company transferred the remainder of the $1,000 notes as collateral security for indebtedness owed to other parties to this suit.

In some manner not clearly shown by the record, the Glen Bailey Company became the owner of the mortgaged real estate, but said company did not assume and agree to pay the aforesaid mortgage indebtedness.

The taxes upon said real estate became delinquent, and the Investment Company paid the same. The amount so paid was secured by the terms and provisions of the aforesaid mortgage. Stanley neglected to pay the interest upon his indebtedness. The amount required to pay the delinquent taxes and interest up to January 1, 1925, was $8,414.25. The Glen Bailey Company paid the Investment Company $414.25, and executed unto the said company 16 promissory notes in the sum of $500 each, the first of said notes becoming due, according to its terms, on July 1, 1925, and the others becoming due every six months thereafter, until January 1, 1933. As security for said 16 notes, the Glen Bailey Company executed unto the Security Loan & Investment Company its mortgage upon the aforesaid real estate, which recites that it is junior and inferior to a mortgage of $45,000 given to the Security Loan & Investment Company, and that, in the event of judicial sale under this mortgage, such sale shall be made subject to the said $45,000 mortgage. These latter notes were drawn on a form which contains the following clause: "This note is secured by a first mortgage on real estate in Polk County, Iowa." Prior to the time of their execution, the word "first" was scratched out, with red ink. The defendants Margaret E. Williams, C. Leonard Williams, Mayme Gordinier, Alma Green, and F. D. Wiley purchased from the Investment Company a portion of these notes, amounting to the principal sum of $7,000. The Investment Company guaranteed the prompt payment of interest on said notes as they should become due, and the payment of the principal at maturity. All of the holders of the Stanley notes and the holders of notes amounting to $7,000 of the Glen Bailey notes are made parties defendant. The plaintiff bank prays for judgment on its collateral notes, and for decree of foreclosure, and that the rights of the holders

of the Glen Bailey notes be decreed junior and inferior to the rights of the holders of the Stanley notes.

The remaining holders of the Stanley notes, by cross-petition, asked judgment on their notes, and joined the plaintiff in the relief demanded. The aforesaid owners of the Glen Bailey notes, by cross-petition, prayed for the foreclosure of the mortgage referred to in plaintiff's petition, and that their notes be held to be secured under said mortgage. They did not ask for the foreclosure of the mortgage executed by the Glen Bailey Company. The remaining defendants defaulted. The court rendered judgment in favor of the holders of the Stanley notes, and established the same as the first lien upon the real estate. Judgment was rendered in favor of the cross-petitioners against the Glen Bailey Company, and their claims were established against the receiver of the Security Loan & Investment Company, and their rights held to be inferior to those of the holders of the Stanley notes, and they are given the right of redemption. From the decision of the court refusing them a share in the proceeds of the sale of the real estate on special execution, the holders of the $7,000 notes aforesaid have appealed.

It is the contention of the appellants that the execution of the Glen Bailey notes and the acceptance of same by the Investment Company did not amount to payment of the delinquent taxes and the interest due at that time on the Stanley notes; that a mortgage secures the debt; and that no change of form or evidence of the debt originally secured by the mortgage, in the absence of an agreement or intention to release it, will release it as security, so long as the identity of the debt can be traced. They rely upon *Gribben v. Clement,* 141 Iowa 144; *Heively v. Matteson,* 54 Iowa 505; *Sloan v. Rice,* 41 Iowa 465; *Port v. Robbins,* 35 Iowa 208; *Hutchinson v. Swartsweller,* 31 N. J. Eq. 205; *Young v. Shaner,* 73 Iowa 555; *Foster v. Paine,* 63 Iowa 85; and other authorities.

We find it unnecessary to determine whether the execution of the Glen Bailey notes amounted to payment of the interest and taxes secured by the Stanley mortgage. However, the fact that the word "first," preceding the word "mortgage" in the notes, was scratched out with red ink, prior to the time of their execution, and the fact that a second mortgage was taken as security therefor, which was made expressly subject to the

Stanley mortgage, and other facts and circumstances shown by the record, are strongly indicative that it was the intention of the Glen Bailey Company to execute, and of the Investment Company to accept, the latter notes in payment of the taxes and unpaid interest on the Stanley notes.

The Stanley notes were negotiable instruments. The appellee holders thereof were holders in due course. One taking  a negotiable promissory note as collateral security for a pre-existing indebtedness is a holder in due course for value. *State Bank of Halstad v. Bilstad,* 162 Iowa 433; *McLaughlin-Gormley-King Co. v. Hauser,* 195 Iowa 224.

The appellants contend that the outstanding notes are non-negotiable, relying upon *Hubbard v. Wallace Co.,* 201 Iowa 1143.  The provisions of the mortgage with reference to the payment of the taxes and the acceleration of the maturity of the notes are not incorporated into and made a part of the notes, as in the cited case. The notes contain the provision:

"This note is secured by a first mortgage on real estate in Polk County, Iowa."

This provision of the notes did not make the stipulation in the mortgage a part of the notes and render them nonnegotiable. *Des Moines Sav. Bank v. Arthur,* 163 Iowa 205.

Therefore, the appellees were the holders in due course of negotiable instruments, at the time of the execution of the Glen Bailey notes. They were the assignees of the mortgage securing the same. The appellees were entitled to the full amount due on the collateral notes, including interest, regardless of any contractual arrangement relative thereto, made between the Investment Company and the Glen Bailey Company. The Investment Company could not, without the consent of appellees, by any contractual arrangement with the Glen Bailey Company change the rights of the appellees; and all that the Investment Company procured by reason of the execution of the Glen Bailey notes which had not been previously assigned by it to the appellees was a right of action against the latter company. The rights of the appellant cross-petitioners can rise no higher than the rights of their assignor.

The appellants, by reason of the notes which they received, with the word "first" scratched out with red ink, and by reason of the notice which they and the record of the two mortgages afford, had both actual and constructive notice of the rights of the appellees.

It is apparent that the decree of the trial court is correct, and the same is hereby affirmed.—*Affirmed*.

STEVENS, C. J., and DE GRAFF, ALBERT, and MORLING, JJ., concur.