**BOYNTON, Atty. Gen. of Kansas, et al. v. FOX WEST COAST THEATRES CORPORATION et al.**

**No. 614.**

Circuit Court of Appeals, Tenth Circuit.

Aug. 1, 1932.

Rehearing Denied Sept. 10, 1932.

852

See, also, 60 F.(2d) 855.

Roland Boynton, Atty. Gen., and William C. Ralston, Asst. Atty. Gen., for appellants.

Hal M. Black, of Wichita, Kan. (C. L. Kagey, of Wichita, Kan., on the brief), for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

The Theatres Corporation and the Theatres Company brought this suit against the Attorney-General of Kansas and certain named county attorneys and county sheriffs of Kansas to enjoin them from prosecuting plaintiffs for operating motion picture theatres in Kansas on Sunday, and from prosecuting quo warranto proceedings to oust them from doing business in that state. From a decree overruling a motion to dismiss the amended bill and granting an interlocutory injunction, defendants have appealed.

After setting up the jurisdictional facts, the amended bill alleged that plaintiffs operate motion picture theatres in Wichita and many other cities in Kansas; that plaintiffs lease the films which they exhibit from producers and distributors; that negatives for the films are made in California and are shipped to eastern states where a great many positive prints are produced therefrom; that such positive prints are distributed to lessees throughout the various states of the United States, exhibited in theatres by such lessees, and ultimately returned to the place where they were made; that in order to make a legitimate profit it is necessary for plaintiffs to operate their theatres on Sunday; that defendants charge the showing of such films by plaintiffs in Kansas on Sunday constitutes a violation of section 21—952, Kan. R. S. 1923, threaten to arrest the officers, agents, and employees of plaintiffs for operating plaintiffs' motion picture theatres on Sunday at Wichita, Sedgwick county, Kansas; and threaten to bring proceedings to oust plaintiffs from doing business in Kansas on account of their operating motion picture shows therein on Sunday; that defendants have discriminated against plaintiffs in that the county attorney of Sedgwick county refused to prosecute more than 200 complaints filed with him, of alleged violations of section 21—952, supra, and in that defendants are knowingly permitting motion picture theatres to operate on Sunday in more than forty cities in Kansas.

In support of their application for a temporary injunction, plaintiffs introduced evidence showing that motion picture theatres are being operated on Sunday in about forty cities in Kansas; that about 200 complaints charging alleged violations of section 21—952, supra, were made to the county attorney of Sedgwick county; that he brought an injunction proceeding against one person charged with operating a swimming pool on Sunday; that such suit was then pending in the Supreme Court of Kansas; that such county attorney did not prosecute the remainder of the complaints because the informers asked to withdraw them; and that such county attorney stood ready to prosecute any proper complaints that were made.

Section 21—952, supra, reads as follows:

"Every person who shall either labor himself or compel his apprentice, servant or any other person under his charge or control to labor or perform any work other than the household offices of daily necessity, or other works of necessity or charity, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and fined not exceeding twenty-five dollars."

In State v. Kelly, 129 Kan. 849, 284 P. 363, the court held that one who opens and operates a motion picture theatre on Sunday violates such statute. See, also, Topeka v. Crawford, 78 Kan. 583, 96 P. 862, 17 L. R. A. (N. S.) 1156, 16 Ann. Cas. 403; Ewing

v. Halsey, 127 Kan. 86, 272 P. 187, and State v. Blair, 130 Kan. 863, 288 P. 729.

In State v. Nesbit, 8 Kan. App. 104, 54 P. 326, and in State v. Blair, supra, the court sustained the constitutionality of this statute and held that it was a valid exercise of the police power. The constitutionality of a similar statute was sustained in Hennington v. Georgia, 163 U. S. 299, 16 S. Ct. 1086, 41 L. Ed. 166. See, also, Petit v. Minnesota, 177 U. S. 165, 20 S. Ct. 666, 44 L. Ed. 716.

 It is urged that this statute, when applied to plaintiffs, contravenes the Federal Constitution, art. 1, § 8, subd. 3, because it regulates and directly burdens interstate commerce. It is well settled that a producer or manufacturer, who ships motion picture films from one state to lessees in another state to be exhibited by the lessees, is engaged in interstate commerce. Binderup v. Pathe Exchange, Inc., 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308; Fox Film Corp. v. Trumbull (D. C. Conn.) 7 F.(2d) 715; Fox Film Corp. v. Federal Trade Comm. (C. C. A. 2) 296 F. 353. But, when an article that has been transported in interstate commerce has arrived at a destination and is there held for use or disposal, it then passes under the protection of state law and becomes subject to the taxing and police power of the state. General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538; Sonneborn Bros. v. Cureton, 262 U. S. 506, 43 S. Ct. 643, 67 L. Ed. 1095; Brown v. Houston, 114 U. S. 622, 632, 5 S. Ct. 1091, 29 L. Ed. 257; Fox Film Corp. v. Trumbull, supra, 7 F.(2d) page 722. It is our opinion that section 21—952, supra, by prohibiting the exhibition of such films on Sunday at theatres in Kansas, when they have come to rest in such state for the purpose of being exhibited by lessees thereof at such theatres, does not regulate or impose a direct burden on interstate commerce. See Nat. League of Pro. Baseball Clubs v. Fed. Baseball Club of Baltimore, Inc., 50 App. D. C. 165, 269 F. 681; Id., 259 U. S. 200, 42 S. Ct. 465, 66 L. Ed. 898, 26 A. L. R. 357.

Furthermore, it was held in Hennington v. Georgia, supra, that a statute of Georgia which prohibited the running of freight trains on any railway in that state on Sunday, although it affected interstate commerce in a limited degree, was not for that reason a needless intrusion upon the domain of federal jurisdiction nor strictly a regulation of interstate commerce, but was an ordinary police regulation designed to promote the general welfare of the people within that state, and was not repugnant to the Constitution of the United States. See, also, Adams Express Co. v. New York, 232 U. S. 14, 31, 34 S. Ct. 203, 58 L. Ed. 483; Atlantic Coast Line R. Co. v. Georgia, 234 U. S. 280, 291, 292, 34 S. Ct. 829, 58 L. Ed. 1312; Wrigley Pharmaceutical Co. v. Cameron (D. C. Pa.) 16 F.(2d) 290; and the dissenting opinion in Sou. Pac. Co. v. Jensen, 244 U. S. 205, 244, 247, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, where the cases sustaining state laws which only incidentally affect interstate commerce are collated.

 Do the allegations of the bill, considered in connection with the proof adduced, show that the defendants have so discriminated against the plaintiffs in the enforcement of this statute as to amount to a denial to plaintiffs of the equal protection of the laws? Const. Amend. 14.

The duties of the several county attorneys are prescribed by statute as follows:

"It shall be the duty of the county attorney to appear in the several courts of their respective counties and prosecute or defend on behalf of the people all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested." (Section 19—702, Kan. R. S. 1923.)

"Each county attorney shall, when requested by any magistrate of his county, appear on behalf of the state before any such magistrate, and prosecute all complaints made in behalf of the state of which such magistrate shall have jurisdiction; and upon the like request shall appear before such magistrate and conduct any criminal examination which may be had before such magistrate, and shall also prosecute all civil suits before such magistrate in which the county is a party or interested." (Section 19—703, Kan. R. S. 1923.)

The duties of the Attorney-General are prescribed by statute as follows:

"The attorney-general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state shall be interested or a party, and shall also, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend, in any other court or before any officer, in any cause or matter, civil or criminal, in which this state may be a party

or interested." (Section 75—702, Kan. R. S. 1923.)

The county attorney of Sedgwick county is charged with the enforcement of the penal laws of the state only in that county. He is not officially concerned with violations of such laws in other counties. The fact that county attorneys in other counties in Kansas were not attempting to enforce section 21—952, supra, against the operators of motion picture shows in their counties would certainly constitute no defense to a prosecution for such a violation in Sedgwick county by the county attorney of that county, especially in the absence of a showing that the several county attorneys were acting in concert and arbitrarily and willfully discriminating against motion picture theatre operators in Sedgwick county. The proof adduced by plaintiffs showed no willful refusal on the part of the county attorney of Sedgwick county to prosecute other violators of section 21—952, supra. On the contrary, plaintiffs' evidence showed the willingness of such county attorney to prosecute all proper complaints that were filed, when the prosecuting witnesses were willing to appear. There is no allegation in the bill showing that the Governor or either branch of the Legislature had requested the Attorney-General of Kansas to prosecute violations of section 21—952, supra, in any court of the state. Plaintiffs neither alleged nor proved any threatened discrimination with respect to quo warranto proceedings. For aught that appears, the Attorney-General contemplates ouster proceedings against all corporations that persist in violations of section 21—952, supra. Plaintiffs have wholly failed to bring themselves within the principles announced in Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220. Broad-Grace Arcade Corp. v. Bright (D. C.) 48 F.(2d) 348; Id., 284 U. S. 588, 52 S. Ct. 137, 76 L. Ed. ——; Ah Sin v. Wittman, 198 U. S. 500, 25 S. Ct. 756, 49 L. Ed. 1142.

■ Finally, are plaintiffs entitled to equitable relief? It is a general rule that a court of equity will not interfere to prevent the enforcement of a criminal statute even though unconstitutional. Fenner v. Boykin, 271 U. S. 240, 243, 244, 46 S. Ct. 492, 493, 70 L. Ed. 927; Hygrade Provision Co. v. Sherman, 266 U. S. 497, 500, 45 S. Ct. 141, 69 L. Ed. 402; Packard v. Banton, 264 U. S. 140, 143, 44 S. Ct. 257, 68 L. Ed. 596; Terrace v. Thompson, 263 U. S. 197, 214, 44 S. Ct. 15, 68 L. Ed. 255. An exception to this general rule exists when the prevention of a threat-

ened prosecution under an alleged unconstitutional enactment "is essential to the safeguarding of rights of property, and when the circumstances are exceptional and the danger of irreparable loss is both great and immediate." Cline v. Frink Dairy Co., 274 U. S. 445, 451, 452, 47 S. Ct. 681, 683, 71 L. Ed. 1146; Fenner v. Boykin, supra; Terrace v. Thompson, supra; Truax v. Raich, 239 U. S. 33, 37, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283; Ex parte Young, 209 U. S. 123, 155, 161, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764.

■ But the attack on the constitutionality of the statute must be real and substantial and must at least present a fairly debatable question; the right alleged to be invaded or threatened must be clear (Truly v. Wanzer, 5 How. 141, 12 L. Ed. 88; St. Louis Street F. M. Co. v. Sanitary Street F. M. Co. [C. C. A. 8], 161 F. 725, 728); and facts from which it will appear that the circumstances are exceptional and the "danger of irreparable loss is both great and immediate" must be clearly and fully set forth. Pittsburg, C., C. & St. L. Ry. Co. v. Board of Public Works, 172 U. S. 32, 19 S. Ct. 90, 43 L. Ed. 354.

"An intolerable condition would arise, if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court." Fenner v. Boykin, supra.

■ Here, if we give the fullest force to the allegations of the amended complaint, the most that can be said is that plaintiffs will either have to close their theaters on Sunday and lose the profits of Sunday operation, or submit to repeated prosecutions and the possibility of ultimate decrees of ouster against them. Have plaintiffs brought themselves within the exception to the general rule? If the attack on the constitutionality of the statute were predicated on substantial grounds, the question might be answered in the affirmative; but such is not the case. We have shown that, prior to the commencement of this suit, the Supreme Court of Kansas had sustained the validity of the statute and held that the operation of a motion picture theater on Sunday falls within its prohibition, and the Supreme Court of the United States had upheld the constitutionality of a similar statute, even when applied to those engaged in interstate commerce. Hennington v. Georgia, supra. Such being the facts, while plaintiffs no doubt have the right to

assert their alleged defenses, we are of the opinion that they should do so in the threatened criminal and quo warranto proceedings when brought, first in the state courts and then, if they are so advised, by seeking a review in the Supreme Court of the United States in the manner provided by the Judicial Code (see 28 USCA § 344); that in the meantime it will be their duty to obey the statute; and that they are not entitled to injunctive relief.

We conclude that the bill is without equity and that plaintiffs are not entitled to the relief sought. It follows, notwithstanding this is an appeal from an interlocutory order, that this court has the power to consider this case on the merits and to direct a dismissal of the bill. Consolidated Cement Corp. v. Pratt (C. C. A. 10) 47 F.(2d) 90, 93.

The decree is reversed and the cause remanded with instructions to dismiss the bill at plaintiffs' cost.